# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**CYNTHIA DEVAUGHN,**                                                                  **PLAINTIFF**

**v.**                                                           **CIVIL ACTION NO. 1:08CV175-SAA**

**COMMISSIONER OF SOCIAL SECURITY,**                                        **DEFENDANT**

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the plaintiff's application for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) benefits under Title XVI. The court has jurisdiction over plaintiff's claims under 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636(c), both parties have consented to have a magistrate judge conduct all the proceedings in this case; therefore the undersigned has the authority to issue this opinion and the accompanying final judgment.

The plaintiff Cynthia Devaughn was born on February 7, 1966. She is a high school graduate. (Tr. 105) Her past employment experience consists of work as a waitress, store cashier and secretary. (Tr. 101) The plaintiff filed her applications for period of disability, disability insurance benefits and SSI on March 1, 2007, alleging a disability onset date of

February 28, 2007.[1] (Tr. 58 - 69). Plaintiff's requests for benefits were denied at the initial and reconsideration stages, and she sought timely review from an administrative law judge (ALJ). The disabilities plaintiff alleged included fibromyalgia, migraine headaches, neck, wrist and arm pain, and change in eyesight. (Tr. 100, 122 - 126.). In an opinion dated March 20, 2008, the ALJ found the plaintiff was not under a disability and denied her request for benefits. (Tr. 20). The Appeals Council denied review, and plaintiff timely appealed to this court. (Tr. 11, 26-35).

The ALJ determined that the plaintiff suffers from "severe" impairments in the form of obesity, myalgia and arthralgias, headaches, and possible fibromyalgia, but that these impairments, either singly or in combination, failed to meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13, Finding No. 3; 15, Finding No. 4). He discounted plaintiff's subjective complaints, finding that her testimony regarding her complaints of pain in her ankle affecting her ability to walk were contrary to Dr Frenz's findings, that her "testimony was inconsistent from one point to another and somewhat inconsistent with the limitations she acknowledged to Dr. Frenz," that her testimony regarding limitations on daily living were not consistent with the objective medical evidence, that her complaints of pain and vision problems were not consistent with her medical records, that she is noncompliant with her medications, and that although she stated in a May 17, 2007 Disability Report that she suffered from depression, she made no mention of depression at the hearing, and there is no medical evidence that she has seen a doctor for depression. (Tr. 17-19). The ALJ did, however, credit plaintiff's subjective complaints and testimony regarding her impairments as they relate to non-

---

[1] In her application the plaintiff alleged that her disability onset date was January 31, 2007. However at the hearing before an Administrative Law Judge on February 20, 2008, the plaintiff, through her attorney, amended the onset date to February 28, 2007. (Tr. 187).

exertional limitations and addressed these limitations in determining plaintiff's residual functional capacity ("RFC"). (Tr. 17).

After considering the record, testimony at the hearing, and the applicable regulations and guidelines, the ALJ determined that the plaintiff retained the RFC to lift/carry up to ten pounds frequently and up to twenty pounds occasionally; occasionally push or pull with her left upper extremity; sit up to six hours in an eight-hour workday; stand/walk no more than four hours in an eight-hour workday; occasionally climb, balance, stoop, crouch, kneel, and crawl; that she must avoid temperature extremes, loud noises and humidity; that she may require the use of a cane for ambulation; and she is limited to jobs that do not demand attention to details, complicated tasks or instructions due to chronic pain and headaches. (Tr. 17). In making these findings, the ALJ afforded little weight to the Medical Source Statement submitted by Dr. Don Smith, plaintiff's treating physician, and instead relied in part on a Medical Source Statement submitted by Dr. Frenz and in part on the plaintiff's credible subjective complaints. *Id.* Considering this determination in conjunction with the testimony of a vocational expert [VE], the ALJ found that the plaintiff was unable to perform her past relevant work (Tr. 19, Finding No. 6), but that there are jobs in significant numbers in the national economy that the plaintiff can perform, including surveillance systems monitor or assembler. (Tr. 20).

The only issue that plaintiff raises on appeal is that the ALJ failed to give controlling weight to opinions of plaintiff's treating physician, Dr. Don Smith. [Docket 16, p. 11]. She contends that the ALJ should have accepted Dr. Smith's opinion as a treating physician as opposed to relying in part on the opinions of the consultative examining physician and creating other limitations based on plaintiff's testimony.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through the five-step sequential evaluation process established by the Social Security Administration.[2] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five.[3] The steps are:

> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> 2. An individual who does not have a "severe impairment" will not be found to be disabled.
> 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> 4. If an individual is capable of performing the work [s]he has done in the past, a finding of "not disabled" must be made.
> 5. If an individual's impairment precludes [her] from performing [her] past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Dominguez v. Astrue*, 286 Fed.Appx. 182, 187-188, 2008 WL 2787483, *4 (5th Cir.,2008). In analyzing step five, considering plaintiff's RFC, age, education and past work experience, the ALJ determines whether she is capable of performing other work.[4] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work.[5] Under applicable Social Security rules and regulations,

---

[2] *See* 20 C.F.R. §§ 404.1520 (1996) & 416.920 (1996).

[3] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[4] 20 C.F.R §§ 404.1520(f)(1) (1996) & 416.920(f)(1) (1996).

[5] *Muse*, 925 F.2d at 789.

4

the Commissioner has the final responsibility for determining an individual's residual functional capacity ("RFC"), whether that RFC prevents her from doing past relevant work, and ultimately for determining whether an individual is disabled under the Social Security Act. *See* 20 C.F.R. § 404.1527.

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)).

<u>Failure to afford controlling weight to plaintiff's treating physician</u>

Medical evidence in the record evidences that the plaintiff saw Dr. Smith three times in the period leading up to her disability onset date, February 28, 2007. (Tr. 155-159). Dr. Smith issued a Medical Source Statement in October 2007 indicating that the plaintiff was able to lift/carry less than ten pounds; could stand/walk less than two hours in an eight-hour workday; could sit only one to two hours in an eight-hour workday; is limited in her ability to push/pull; can only occasionally climb, kneel, crouch or stoop; should never balance or crawl; is limited in manipulative functions excepting only gross manipulation or handling; has limitations on her vision, and should avoid temperature extremes, humidity, and other environmental hazards. (Tr.

5

163-166). The plaintiff asserts that she saw Dr. Smith more than the three times reflected in the medical records. [Docket 16, p11], but the Social Security Administration's policy is to request medical records from a physician dating from only two years before the claimed onset date, and the records requested were not updated before the hearing. *Id.* Plaintiff contends she made three additional visits to Dr. Smith that were not included in the record, *id.*, but she neither sought the additional records herself or asked that the record be amended or supplemented to include additional records from Dr. Smith, so neither the ALJ, Appeals Council, or this court is privy to any additional information outside of the medical evidence in the record.[6]

An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence. . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled. 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further provide "additional evidence or clarification" *will* be sought " [emphasis added by the court] when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). Because the plaintiff did not raise the issue of additional medical records from Dr. Smith at the hearing or on appeal to the Appeals Council, the evidence is not currently before the undersigned for consideration. Additionally, the plaintiff has made no proffer as to the

---

[6]The burden is on the plaintiff to provide sufficient medical evidence to establish a disability. Additional medical information to establish a disability or to underscore the treatment relationship of a doctor to plaintiff, *i.e.*, to establish that he is her "treating physician," could have been provided by the plaintiff through her counsel. *See* 29 C.F.R. §§404.1512(a); 416.912(a); *see also Summerford v. Massanari,* Civil Action No. 1:97cv332-SAA, Docket 39, Memorandum Opinion (N.D. Miss. March 6, 2002); *Weber v. Barnhart*, 348 F.3d 723, 725-26 (8th Cir. 2003).

relevancy of the other visits to the determination of disability regarding her March 2007 applications outside of establishing Dr. Smith as plaintiff's treating physician. Because the information is not before the court, it will not be considered here.

The Fifth Circuit has held that generally "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995); see also 20 C.F.R. § 404.1527(d)(2). Although the treating physician's opinion and diagnosis should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted). Good cause may exist to allow an ALJ to discount the weight of evidence of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000).

All of the standards and requirements submitted by plaintiff regarding affording controlling weight to a treating physician and the ALJ's duty to give deference to a treating physician are correct. However, the fact remains that the only evidence in this record reflects that Dr. Smith's treatment history for the plaintiff consisted of three office visits. An ALJ is not required to take a plaintiff's assertion of a treating physician relationship at face value. *See Taylor v. Astrue,* 245 Fed.Appx. 387, 391 (5th Cir. 2007)(slip op); *Hernandez v. Heckler,* 704

F.2d 857, 860-61 (5th Cir.1983) (affirming ALJ's determination that a doctor who only saw the claimant twice in a 17-month period was not a treating physician). According to the medical records in evidence, Dr. Smith saw the plaintiff in October 2006, January 2007 and February 2007. He submitted a Medical Source Statement in October 2007. (Tr. 153-159, 163-166). This treatment history, as made available to the ALJ, revealing that the plaintiff saw Dr. Smith three times in the two-year period leading up to her onset date, provides little reason for the ALJ to have determined that Dr. Smith had significantly more familiarity or a more detailed or lengthy history of treatment of the plaintiff that would necessitate affording him deference over another examining physician.

In order for an ALJ to properly afford lesser weight to the medical opinions of a treating physician, he must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). *Newton* noted the factors that the ALJ must consider under the agency's own regulations before declining to give evidence of a treating physician controlling weight:

    (1) the physician's length of treatment of the claimant,
    (2) the physician's frequency of examination,
    (3) the nature and extent of the treatment relationship,
    (4) the support of the physician's opinion afforded by the medical evidence of
       record,
    (5) the consistency of the opinion with the record as a whole; and
    (6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(d)(2). Social Security Administration Regulations provide that the Social Security Administration "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." The regulation is construed in SSR 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.

*See also Newton*, 209 F.3d at 456.

Under SSR 96- 5p, an ALJ must provide appropriate explanations when he declines to afford controlling weight to the treating physician's opinions. *Id.* In this case, the ALJ clearly reviewed Dr. Smith's records. In fact, Dr. Smith's records are thoroughly addressed throughout his decision along with all the medical evidence. The ALJ discussed the fact that Dr. Smith had only seen the plaintiff two or three times, that he was one of four doctors that saw the plaintiff during the relevant time period, including the two consultative physicians, Drs. Russell and Frenz. (Tr. 13-15). The ALJ noted that despite her allegations of severe pain, the plaintiff did not seek treatment during the relevant period other than these three visits to Dr. Smith, nor did she have any trips to the emergency room during the relevant time period. (Tr. 18). The ALJ discussed the inconsistencies between Dr. Smith's treatment notes, his Medical Source Statement – finding that the plaintiff was capable of less than sedentary work – and the plaintiff's testimony at the hearing that she was capable of "substantially more than Dr. Smith's opinion would indicate."[7] (Tr. 15). In light of these factors and the record as a whole, as taking into account the

---

[7]Examples of these inconsistencies include: Dr. Smith limits plaintiff to being able to lift/carry less than ten pounds, yet plaintiff states that she does all of her grocery shopping for a family of four for one month in a single day often loading and unloading all bags with minimal help, that she can lift a ten pound bag of sugar and that she told Dr. Frenz she could lift ten pounds (Tr 163, 198, 195, 174), plaintiff testified that her on average twice a week her pain was a nine or ten on a ten point scale with ten being the highest; yet she does not take all prescribed medications to ease the pain (Tr. 190, 203); Dr. Smith indicates that plaintiff can only stand/walk for less than 2 hours in an 8 hour workday, yet plaintiff testified she grocery shopped in four
9

hearing testimony of the plaintiff and the VE, the ALJ afforded little weight to Dr. Smith's opinion and assessment of the plaintiff. (Tr. 15).

The court considers objective medical facts, diagnoses and opinions of treating and examining physicians, the claimant's subjective evidence of pain and disability, and the claimant's age, education, and work history when considering whether the ALJ's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (*per curiam*), *see also Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Even though the ALJ is afforded discretion when reviewing facts and evidence, he is not qualified to interpret raw medical data in functional terms. *Perez v. Secretary of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991) (citations omitted); *see Richardson v. Perales*, 402 U.S. 389, 408 (1971) (upholding the use of testimony from vocational expert because the ALJ is a layman). Furthermore, lack of affirmative evidence supporting the ALJ's findings as to a claimant's residual functional capacity may require remand for further development of the record. 3 SOCIAL SECURITY LAW AND PRACTICE § 43:14 (Timothy E. Travers *et al.* eds., 1999). Finally, where an ALJ fails to provide appropriate explanations in not affording proper weight to a plaintiff's treating physicians' opinions, the case must be remanded. *Newton* 209 F. 3d at 456. In this case, the ALJ considered the records and medical source statement from Dr. Smith but found that it was contrary, in several respects, to plaintiff's testimony regarding her work related abilities and that it was not consistent with his own treatment notes. Even though he did not expressly delineate each individual factor, the ALJ discussed the factors necessary to be addressed before

---

different stores on the same day and that she is able to be in the store for about an hour before she has to sit down, and that she told Dr. Frenz that she could only stand for 45 minutes or a total of 4 hours in a regular 8 hour day. (Tr. 163, 190, 174).

affording lesser weight to a treating physician and properly determined that there was good cause for affording Dr. Smith's lesser weight. It is clear that the ALJ carefully considered Dr. Smith's brief treatment history as reflected in records obtained from Dr. Smith and not supplemented or contradicted by the plaintiff. Considering those records in combination with the effects of plaintiff's obesity, possible fibromyalgia, pain, assessment of daily living activities, the VE's testimony and applicable regulations, the ALJ determined that the plaintiff was not under a disability as defined by the Act. After diligent review, the court holds that the ALJ's decision was supported by substantial evidence as required by this Circuit and therefore must be affirmed.

## CONCLUSION

A final judgment in accordance with this memorandum opinion will be issued this day. This, the 14th day of August, 2009.

    /s/ S. Allan Alexander
    UNITED STATES MAGISTRATE JUDGE